UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 05-335 (JMR/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Bruce W. Betcher, | |
| Defendant. | |

Erica MacDonald, Assistant United States Attorney, for the Government.
Thomas Shiah, for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 9, 2006, on Defendant's Motion to dismiss the superseding indictment: lack of nexus with interstate commerce [#53], Defendant's Motion for a Bill of Particulars [#54], and Defendant's Motion to suppress evidence seized by search and seizure [#55]. The Court did not receive any testimony during the hearing. The Government submitted two exhibits at the hearing. Exhibit Number 5 is a search warrant issued for an address in Hopkins, Minnesota. Exhibit Number 6 is a search warrant issued for the offices of Comcast. These matters were referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motions be **DENIED**.

### I.   BACKGROUND

In August 2005 Department of Homeland Security Immigration and Customs Enforcement (ICE) agents executed a search warrant at a residence in Atlanta, Georgia. (Ex. 5 at 5.) The search warrant lead to the seizure of a hard drive with over 2,000 images of child pornography and child erotica. (Ex. 5 at 5.) These images were submitted to the National Center for Missing and Exploited

Children (NCMEC) to be reviewed by the Child Victim Identification Program (CVIP). (Ex. 5 at 5.) Approximately 78 images of child pornography and child erotica were previously unknown to CVIP. (Ex. 5 at 5.) Based on an extensive investigation, Defendant was developed as the suspect who created these images. (Ex. 5. at 6.) On September 19, 2005, Jessica Begres, a Special Agent with ICE, and other law enforcement officers executed a search warrant on Defendant's residence. (Ex. 5 at 6.) During the execution of the search warrant, Special Agent Begres assisted Detective Steven Adrian of the Burnsville Police Department in conducting an interrogation of Defendant. (Ex. 5 at 6-7.) Following the execution of the search warrant, a forensic examination was conducted on the three computers seized as a result of the search. (Ex. 5 at 7.) Ninety-six images and sixteen videos depicting child pornography were recovered, and none of the images recovered from the ICE search warrant in Georgia were recovered during the forensic examination of Defendant's computers. (Ex. 5 at 7.) Law enforcement officials interviewed children pictured in the images recovered from the Georgia search warrant and three of these children identified Defendant as the individual who had taken those photographs. (Ex. 5 at 7.) Defendant was indicted on October 12, 2005, on seven counts of production of child pornography in violation of 218 U.S.C. §§ 2251 (a), (b), (e) and a forfeiture count under 18 U.S.C. § 2253(a).

A.   **The Search Warrant Issued in Hopkins**

In October 2005, Defendant's wife contacted Special Agent Begres and notified her that Defendant owned a computer that was not present at his residence during the execution of the search warrant on September 19, 2005. (Ex. 5 at 8.) Defendant's wife told Special Agent Begres that Defendant told her that the computer was taken to a third party repair person. Mrs. Betcher stated that she never met the third party, but that she was told by her husband that the person was a black

2

male. (Ex. 5 at 8.) Mrs. Betcher provided Special Agent Begres with a telephone number for the third party repair person. (Ex. 5 at 8.)

On December 15, 2005, Special Agent Begres interviewed a friend of Defendant, who stated that the computer Defendant gave to the third party repair person was purchased approximately two years prior to the repair, that the computer had internet access and that Defendant utilized this computer to access his work email. (Ex. 5 at 8.) Defendant's friend told Special Agent Begres that, based on his conversation with Defendant, the computer was fixed and ready for pick-up approximately two weeks prior to the execution of the search warrant on Defendant's residence. (Ex. 5 at 8-9.) Defendant's friend described the computer tower as "light in color, custom-made, with buttons on the computer tower that were the same color as the tower itself." (Ex. 5 at 9.) Defendant's friend stated that he had met the third party repair person previously but could not identify that person when shown a photograph of him. (Ex. 5 at 9.)

Special Agent Begres issued a summons to Qwest Phone Company for the phone number provided by Mrs. Betcher and conducted a check of the Minnesota Department of Motor Vehicle records in order to ascertain the residence of the third party repair person. (Ex. 5 at 9-10.) Special Agent Begres was provided with a Hopkins address as a result of the Qwest summons and a Minnetonka address as a result of the Motor Vehicle records search. (Ex. 5 at 9-10). Special Agent Begres then ran a check of Accurint, an open-source informational database, that revealed that the third party repair person previously resided at the Minnetonka address and had moved to the Hopkins address in June, 2005. (Ex. 5 at 10.) On December 13, 2005, Special Agent Begres received notification from a postal inspector that the third party received mail at the Hopkins address and that no other individuals received mail at the Hopkins address. (Ex. 5 at 10.)

3

Based on the above recited information, Special Agent Begres applied for a search warrant at the residence of the third party repair person, to recover any computers, associated storage devices or other devices located on the premises that were related to Defendant and that could be used to store information or connect to the internet. (Ex. 5.) The warrant authorized Special Agent Begres to search any such devices for records and materials evidencing a violation of 18 U.S.C. § 2252 and related statutes, that criminalize the possession, receipt and transmission of child pornography. (Ex. 5.) Special Agent Begres noted in her affidavit in support of her application for a search warrant that individuals who are sexually attracted to children collect sexually explicit materials involving children, and that the use of computers to traffic, trade and collect child pornography is "a growing phenomenon." (Ex. 5 at 11.) Based on all this information, Special Agent Begres stated that there was probable cause to believe that a computer owned by Defendant was located at the address in Hopkins, and that this computer contained evidence of the violation of 18 U.S.C. Section 2252 and related statutes. (Ex. 5 at 14-15.) On December 27, 2005, a search warrant was issued for the residence of the third party repair person in Hopkins, Minnesota. (Ex. 5.)

    **B.**    **The Comcast Search Warrant**

On December 2, 2005, a search warrant was issued for the offices of Comcast in order to search the account named bwb.betcher@comcast.net. (Ex. 6.) In the application for a search warrant, Special Agent Begres noted that Comcast is an electronic mail service that is available to Internet users for a subscription fee, and that Comcast maintains electronic records pertaining to individuals for which they maintain subscriber accounts. (Ex. 6 at 3.) Special Agent Begres further noted that any email sent to a Comcast subscriber is stored in the subscriber's "mail box" on Comcast's servers until the subscriber retrieves, opens, or deletes it. (Ex. 6 at 3.) Special Agent

Begres noted that, "[w]henever a subscriber sends or receives e-mail messages using an account provided by Comcast, a copy of that message may be temporarily stored on the servers of Comcast and it may continue to reside there for several days or weeks, depending on the actions of the subscriber and the policies and storage capacity of Comcast." (Ex. 6 at 4.) Special Agent Begres further noted that "[e]ven if the contents of the message no longer exist on the company's servers, Comcast may have records of when a subscriber logged into his or her account, when a message was sent or received, as well as technical routing information that law enforcement could use to determine who sent or received an e-mail." (Ex. 6 at 5.)

In the affidavit in support of the search warrant, Special Agent Begres noted that, pursuant to 18 U.S.C. § 2703, if the government obtains a search warrant issued under the Federal Rules of Criminal Procedure, it can require a provider of e-mail services to disclose not only the contents of a subscriber's stored email messages, but also the non content, transactional data and other subscriber information. (Ex. 6 at 5-7.) Special Agent Begres stated in her affidavit that, in 2003, ICE, in conjunction with other federal agencies, conducted a joint investigation entitled Operation Falcon, and that during this investigation Defendant was identified as a person who purchased memberships at three child pornography websites over the Internet. (Ex. 6 at 8-9.)

Special Agent Begres further explained that the execution of a search warrant in Atlanta, Georgia led to the recovery of over 2,000 child pornography images, and that an analysis of the background of some of these images led to an investigation that developed Defendant as the suspected photographer of some of these images. (Ex. 6 at 10.) Special Agent Begres noted that a search warrant was executed on Defendant's residence on September 19, 2005, and that during this search, multiple e-mail printouts were retrieved, including one from "Orange Bill" to

bwb.betcher@comcast.net that detailed a credit card transaction for access to a members-only website named UNDERAGE-HOME. (Ex. 6 at 12.) Special Agent Begres stated that she participated in the questioning of Defendant at his home during the execution of the search warrant, and Defendant admitted to, among other things, purchasing access to child **pornography** websites and actually accessing those sites to download child pornography in still and video format. (Ex. 6 at 11.) During the same interview Defendant admitted using Comcast for internet service and stated that his email account was bwb.betcher@comcast.net. (Ex. 6 at 11.)

Based on Special Agent Begres' training and experience, the investigation of Operation Falcon as it related to Defendant, the email printouts discovered during the execution of the search warrant, and the admissions and statements of Defendant, Special Agent Begres stated she had probable cause to believe that Defendant subscribed to various child pornography websites and that he conducted transactions with these websites over the internet using his email account, bwb.betcher@comcast.net. (Ex. 6 at 12-13.) Based on these facts Special Agent Begres stated she had probable cause to believe that evidence, fruits, and instrumentalities existed on the computer systems owned, maintained or operated by Comcast of violations of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess child pornography, and 18 U.S.C. §§ 2252(a)(1) and 2252A(a)(1), which make it a crime to transport or ship child pornography in interstate commerce. (Ex. 6 at 13.)

### C.    The Superseding Indictment

On February 16, 2006, a superseding indictment was issued alleging violations of 18 U.S.C. §§ 2251 (a), (b), (e); 18 U.S.C. §§ 2252 (a)(2), (a)(4)(B), and (b)(1); and 18 U.S.C. § 2253. (Docket No. 47.) In the superseding indictment, Defendant is charged with 24 counts of production of child

pornography. In the indictment, within each of these 24 counts, the Government alleges that each of the computer image files identified "were produced using materials, including but not limited to an Olympus digital camera, that have been mailed, shipped, and transported in interstate and foreign commerce by any means and which visual depictions were actually transported in interstate and foreign commerce . . ." (Docket No. 47.) In Count 25 of the superseding indictment, Defendant is charged with

> knowingly receiv[ing] a visual depiction that had been mailed, shipped, and transported in interstate and foreign commerce, and which contained materials which had been so mailed, shipped, and transported, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct . . . in violation of [18 U.S.C. §§ 2252 (a)(2) and 2252 (b)(1).]

(Docket No. 47.)

> Count 26 of the superseding indictment alleges that Defendant

> did knowingly possess one or more matters or computer image files which did contain a visual depiction that had been mailed, shipped, and transported in interstate and foreign commerce, and which was produced using materials which had been so mailed, shipped, and transported, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct . . . in violation of [18 U.S.C. §§ 2252(a)(4)(B) and 2252 (b)(2).]

(Docket No. 47.)

Defendant now moves to dismiss the superseding indictment alleging that there is a lack of nexus with interstate commerce. In the alternative, if the motion to dismiss is denied, Defendant moves for a Bill of Particulars. Finally, Defendant makes a motion to suppress the evidence seized pursuant to the Comcast and the Hopkins, Minnesota search warrants. For the reasons that follow, the Court recommends that Defendant's Motions be denied.

## II.  LEGAL ANALYSIS

> A.  **The Search Warrants Issued For the Computer Systems of Comcast, and the Residence of the Third Party Repair Person, Were Both Supported By Probable Cause.**

Defendant challenges both of the search warrants in this case on their four corners, alleging that each warrant was issued without probable cause. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. Illinois v. Gates, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; see also United States v. Salter, 358 F.3d 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court "had a 'substantial basis for . . . conclud[ing] that probable cause existed.'" United States v. Oropesa, 316 F.3d 762, 766 (8th Cir. 2003) (quoting Gates, 462 U.S. at 238-39.) Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the magistrate's determination is accorded great deference. U.S. v. Wajda, 810 F.2d 754, 760 (8th Cir. 1987) (citing United States v. Leon, 468 U.S. 897, 914 (1984)).

### 1. The Search Warrant Issued for the Offices of Comcast was supported by probable cause.

In the present case, there was probable cause to believe that there was evidence at the offices of Comcast of Defendant's involvement in the possession or transportation of child pornography. As a result of Operation Falcon, Defendant was identified as a person who purchased memberships at child pornography websites. As a result of the execution of a search warrant in Georgia, Defendant was identified as a person who was suspected of producing images of child pornography. As a result of the execution of a search warrant on Defendant's residence, law enforcement officers uncovered several e-mail printouts and one such e-mail printout detailed a credit card transaction for access to a members-only website entitled UNDERAGE-HOME. During the execution of the search warrant Defendant admitted using the internet to access child pornography websites and admitted to downloading child pornography material from these websites. Defendant admitted to using Comcast as his internet service provider and stated that his e-mail address with Comcast was **bwb.betcher@comcast.net**. Special Agent Begres confirmed that Comcast maintains electronic records pertaining to the individual subscriber accounts, and that, when a subscriber sends or receives e-mail using a Comcast account, a copy of that message may be temporarily stored on Comcast servers for several days or weeks. (Ex. 6 at 3-4.) Special Agent Begres further confirmed that, even if the contents of the message are not retained on the Comcast servers, Comcast may have records of when a subscriber logged into his account, when a message was received or sent, as well as technical routing information that law enforcement could use to determine the sender and receiver of the e-mail. (Ex. 6 at 4-5.)

Looking at the totality of the circumstances regarding the evidence presented in the affidavit in support of the search warrant, a reasonable person could believe there was a fair probability that

9

child pornography contraband or evidence of possession, or transportation of child pornography, could be discovered on the computer systems maintained, owned and operated by Comcast.

        **2.      The search warrant issued for the third party repair person's residence in Hopkins, Minnesota, was supported by probable cause.**

There was also probable cause to believe that there was evidence of a violation of 18 U.S.C. § 2252 and related statutes in Defendant's computer, associated storage devices or other devices owned by Defendant, and there was probable cause to believe that a computer owned by Defendant was located in the residence of the third party repair person in Hopkins, Minnesota. As a result of the execution of a search warrant in Georgia, which revealed over 2,000 images of child pornography, Defendant was identified as a person who was suspected of production of various images depicting child pornography. Pursuant to a search warrant, Defendant's residence was searched, and three computers were seized. A forensic examination conducted on these computers revealed sixteen videos and 96 images depicting child pornography. None of the images recovered from the search warrant executed in Georgia were recovered during the forensic examination of the three seized computers. Law enforcement interviewed children pictured in the images recovered from the Georgia search warrant, and three of these children identified Defendant as the person who had taken photographs of them.

Special Agent Begres stated in her affidavit that in October 2005 she was contacted by Defendant's wife and informed that Defendant owned another computer that was not present at his residence during the search on September 19, 2005. Mrs. Betcher informed Special Agent Begres that Defendant told her that the computer was being repaired by an individual, who's name she knew and who her husband described as a black male. Mrs. Betcher also provided Special Agent Begres

10

with a phone number for the repair person.

In addition to this interview, Special Agent Begres interviewed a friend of Defendant's, who informed her that the computer Defendant was having repaired by the repair person was approximately two years old, had internet access, and was utilized by Defendant to check his work email. Defendant's friend further stated that Defendant had taken the computer to be repaired and that, based on his conversation with Defendant, the computer was ready to pick up approximately two weeks prior to the execution of the search warrant on his residence. Defendant's friend further described the computer as "light in color, custom-made, with buttons on the computer tower that were the same color as the tower itself." (Ex. 5 at 9.)

Using this information, Special Agent Begres conducted her own investigation to determine where the third party repair person resided. Special Agent Begres issued a summons to Qwest Phone Company to determine the address connected to the phone number provided by Mrs. Betcher, and she was provided with an address in Hopkins, Minnesota. Special Agent Begres conducted a check of the Minnesota Department of Motor Vehicles on the name provided by Mrs. Betcher and Defendant's friend and was provided with a Minnetonka address for that individual. Special Agent Begres then ran a check of the name provided through Accurint, which revealed that the third party repair person moved from the Minnetonka address provided by the Minnesota Department of Motor Vehicles to the Hopkins address provided by the Qwest summons in June, 2005. Special Agent Begres took steps to confirm the accuracy of this information by determining from a postal inspector that the third party repair person identified by Mrs. Betcher and Defendant's friend received mail at the Hopkins address. Based on this extensive investigation, Special Agent Begres determined that the third party repair person resided at an address in Hopkins. Looking at the totality of the

circumstances, and taking into account the facts stated above, a reasonable person could believe there was a fair probability that contraband or evidence of the crime of possession or production of child pornography would be found on the hard drive of a computer owned by Defendant that was previously connected to the internet.  Looking at the totality of the circumstances, a reasonable person could believe there was a fair probability that such a computer was located in the residence of the third party computer repair person in Hopkins, Minnesota.

In the present case, probable cause existed for the issuance of both the warrant to search the computer systems of Comcast and the residence of the third party repair person.  Therefore, both warrants were validly issued and Defendant's motion to suppress any evidence obtained as a result of the execution of these search warrants is denied.

> **B.      The Indictment Sufficiently Alleges a Nexus With Interstate Commerce and a Bill of Particulars Is Not Necessary Given the Discovery Provided By the Government.**

In his memorandum in support of his motion to dismiss the indictment for lack of a nexus with interstate commerce, Defendant argues that, although the indictment alleges that Defendant used "an Olympus digital camera that had traveled in interstate commerce to manufacture images of child pornography and the images traveled in interstate commerce," "[n]o allegation of any impact on interstate commerce other than the interstate shipment of a camera and the pictures is made" and therefore, "[t]he manufacturing/producing and transportation charges should be dismissed as unconstitutional" because "there is an insufficient interstate impact to support a conviction." (Mem. in Support at 1.)

> **1.     Defendant's constitutional challenges to the indictment fail because the Eight Circuit has upheld the constitutionality of the statutes charged in the indictment in this case.**

Defendant argues that "[t]he manufacturing/producing and transportation charges should be dismissed as unconstitutional, as there is an insufficient interstate impact to support a conviction under sections 2251 (a), (b), and (e) based on the decision in United States v. Lopez, 514 U.S. 549 (1995) and the decisions that follow it."  (Mem. in Support at 1.)  However, the Eighth Circuit has already rejected this argument in several cases.  See e.g., United States v. Mugan, 394 F.3d 1016, 1021-24 (8th Cir.2005), judgment vacated on other grounds, 126 S.Ct. 670 (2005); United States v. Hampton, 260 F.3d 832, 834 (8th Cir.2001) (rejecting Lopez challenge to Section 2251(a) and 2252 (a)(4)(B) and holding that it was enough that the videotapes used to record Defendant's actions were manufactured outside of the state of Missouri, even though all of Defendant's actions took place within the state of Missouri); United States v. Hoggard, 254 F.3d 744, 746 (8th Cir.2001) (upholding United States v. Bausch and the constitutionality of § 2251(b) notwithstanding the United States Supreme Court's holdings in United States v. Morrison, 529 U.S. 598 (2000), and Lopez, 514 U.S. 549 (1995)); United States v. Bausch, 140 F.3d 739, 740-41 (8th Cir.1998).

In United States v. Bausch, the defendant challenged the constitutionality of 18 U.S.C. § 2252 (a)(4)(B), arguing that "Congress lacks the power to regulate the possession of sexually explicit photographs of minors when the photographs have not traveled in interstate commerce and are not intended to be placed in commerce."  140 F.3d at 740-41.  The Eight Circuit began its analysis of this issue by observing that the Commerce Clause provides Congress with the power to regulate three types of activity "(1) use of the channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities that substantially affect interstate commerce."  Id. at 741 (citing United States v. Lopez, 514 U.S. 549, 558-5 (1995)).

The Eight Circuit noted that § 2252 (a)(4)(B) "contains an express jurisdictional element requiring the transport in interstate or foreign commerce of the visual depictions *or* the materials used to produce them . . . [t]hus, the statute ensures, through a case-by-case inquiry, that each defendant's pornography possession affected interstate commerce." Id. (emphasis added) (citations omitted). Therefore, the Eight Circuit concluded that § 2252 (a)(4)(B) is a proper exercise of Congress's commerce power under the third category outlined in Lopez; that is, that such activities substantially affect interstate commerce. Id. The court concluded that, since the jury found that the defendant had taken the photographs using a Japanese camera that had been transported in interstate or foreign commerce, the jurisdictional nexus was satisfied and § 2252 (a)(4)(B) and was not facially unconstitutional. Id.

Defendant argues that "[t]he significance of . . . the decision in . . . Bausch . . . to this Court's analysis is limited by intervening developments in this area of law" and that the United States Supreme Court decision in United States v. Morrison, 529 U.S. 598 (2000) affects the validity of the Bausch opinion. (Mem. in Support at 2.) However, the Eight Circuit's holdings in United States v. Hampton and United States v. Hoggard refute any such argument.

In United States v. Hampton, the Eighth Circuit explicitly upheld the constitutionality of 18 U.S.C. § 2251(a) and § 2252(a)(4)(B). 260 F.3d at 834-35. In Hampton, the defendant argued that Bausch was "no longer good law in light of the Supreme Court's holdings in United States v. Morrison, 529 U.S. 598 . . . (2000), Jones v. United States, 529 U.S. 848 . . . (2000), and United States v. Lopez, 514 U.S. 549 . . . (1995)." Id. However, the Eighth Circuit noted that, "[s]ince those cases were decided . . . we have held that Bausch continues to control the constitutionality of federal criminalization of child pornography produced with materials that have traveled in interstate

14

commerce and accordingly affirmed a conviction under § 2251(b) . . . Accordingly [defendant's] constitutional attack on the statute fails." Id. (citing United States v. Hoggard, 254 F.3d 744, 746 (8th Cir.2001)). In United States v. Hoggard, the Eight Circuit upheld a conviction under 18 U.S.C. § 2251(b). 254 F.3d 744, 746 (8th Cir.2001). In Hoggard, the Eight Circuit stated that

> [t]he defendant cites United States v. Morrison . . . and United States v. Lopez . . . in both of [these] cases the Supreme Court invalidated statutes as falling outside the authority conferred upon Congress by the Commerce Clause. In neither of those cases, however, did the statute involved contain an express jurisdictional element, requiring the government to prove, in each case, a concrete connection with interstate commerce. This panel is bound by the reasoning of Bausch, and we therefore must reject the defendant's Commerce Clause challenge.

Id. at 746.

In United States v. Mugan, the defendant was charged with violations of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B). 394 F.3d at 1019. The proof that was offered to prove that the subject child pornography was produced with materials transported in interstate commerce was that the pornographic photographs were stored on a digital memory stick that was previously transported in interstate commerce. Id. at 1022. The Eight Circuit rejected defendant's constitutional challenge to these statutes, stating that

> [n]ot only must [defendant's] constitutional challenge be rejected under our circuit precedents, but a more detailed application of the *Morrison* factors supports that result. Given the congressional findings about the nationwide child pornography market and its dependence upon locally produced materials for both supply and demand, [defendant] is not entitled to prevail on his constitutional arguments.

Id. at 1024.

Defendant argues that "[n]otwithstanding the court's statements in Mugan that Congress associates intrastate production of pornography using material that has traveled in interstate commerce with intrastate commerce . . . the affect on interstate commerce in that situation is too

15

tenuous so as to constitutionally enforce the statute." (Mem. in Support at 3.) This argument fails under the precedent of this circuit. Likewise, Defendant's argument that "the dissemination of pictures via the internet is not per se a commercial activity that affects commerce" fails, because, as the Eighth Circuit noted in Mugan,

> [t]he extent of the interstate market for child pornography described by Congress and its dependence upon locally produced materials demonstrate that the intrastate production and possession of child pornography is an economic activity connected to interstate commerce. The congressional findings underlying the child pornography statute at issue in the case before the court distinguish it from Lopez . . . where there were no findings tying the statute to interstate commerce, and from Morrison . . . where there were only general findings showing no more than an attenuated effect on interstate commerce.

Id. at 1023.

It is clear that the Eighth Circuit has determined that each of the child pornography statutes at issue in the present case are constitutional. Furthermore, insofar as Defendant is attempting to challenge the sufficiency of the evidence, Defendant's challenge fails. It appears from the parties' memoranda concerning this issue that the Government intends to prove that photographs manufactured in Minnesota were discovered in Georgia. Therefore, the Government has proffered evidence that the photographs were actually transported in interstate commerce, and this evidence, if proven, supports the jurisdictional nexus in this case. Furthermore, in the indictment the government alleges that the photographs were manufactured using materials that had been mailed, shipped, and transported in interstate commerce; specifically, by use of an Olympus digital camera that was manufactured outside of Minnesota and traveled in foreign or interstate commerce to Minnesota. As discussed above, this allegation, if proven, is sufficient to satisfy the jurisdictional element. See e.g. United State v. Mugan, 394 F.3d at 1021-24 (jurisdictional element satisfied where defendant stored photographs on a digital memory stick that was transported in interstate

commerce); United States v. Hampton, 260 F.3d at 834-35 (jurisdictional element satisfied where pornographic images were captured on a videotape which was manufactured outside of the state, even where the entire production of the child pornography occurred intrastate); and United States v. Bausch, 140 F.3d at 749-51, (jurisdictional element satisfied when the defendant used a digital camera made in Japan to capture child pornography.)  Finally, the government also alleges that it will prove Defendant received and possessed visual depictions on his computer in Minnesota which were manufactured outside of the state of Minnesota.  Therefore, because the Government intends to prove the jurisdictional nexus required for all of the charges included in the superseding indictment, the Court recommends that Defendant's motion to dismiss the superseding indictment be denied.

### 2. The Government has provided adequate discovery such that a bill of particulars is unnecessary.

In the alternative, Defendant requests that this Court order the prosecution to "describe and disclose all evidence of the nexus between the conduct charged in Counts 1-26 of the Superseding Indictment . . . and interstate commerce." (Def's Mot. at 1.)  As noted by this District,

> [a] Bill of Particulars is intended to permit a Defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'

United States v. Finn, 919 F.Supp. 1305, 1325 (D.Minn.1995) (quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir.1987) (per curiam)).  A Bill of Particulars "is not intended to be a substitute for discovery, nor is it designed to provide information which the Defendant might regard as generally helpful, but which is not essential to his defense" and a Bill of Particulars "should not issue where the specifics requested by the Defendant[ ] are readily available elsewhere."  Id.

Based on the discovery provided in this case, a bill of particulars appears to be unnecessary. Defendant has access to sufficient information to inform him of the nexus the Government alleges between the conduct charged in Counts 1-26 of the Supreseding Indictment in this case and interstate commerce. As such, the Court recommends that Defendant's motion for a Bill of Particulars be denied.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to dismiss the superseding indictment: lack of nexus with interstate commerce [#53], Defendant's Motion for a Bill of Particulars [#54], and Defendant's Motion to suppress evidence seized by search and seizure [#55] be **DENIED**.


DATED: April 3, 2006                                          s/ *Franklin L. Noel*
                                                              FRANKLIN L. NOEL
                                                              United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 20, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 20, 2006** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.